UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------------------X

In re:

BARRY DYNKIN,

                                        Debtor,

------------------------------------------------------------------------X

BARRY DYNKIN,

                                        Appellant,

              -against-

BEN-ZION ALCALAY,

                                        Appellee.

------------------------------------------------------------------------X

**MEMORANDUM & ORDER**

CV 25-2150 (GRB)

**FILED**
**CLERK**
3/10/2026 11:09 am
**U.S. DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**
**LONG ISLAND OFFICE**

**GARY R. BROWN, United States District Judge:**

The instant case is an appeal of debtor Barry Dynkin ("Dynkin" or "debtor" or "appellant") from a Decision and Order entered by the Honorable Alan S. Trust, United States Bankruptcy Chief Judge for the Eastern District of New York, granting the motion filed by Ben-Zion Alcalay ("Alcalay" or "appellee") for summary judgment and excepting Alcalay's claim from discharge pursuant to 11 U.S.C. § 523(a) in the debtor's underlying Chapter 7 bankruptcy proceeding. For the reasons set forth below, the Court affirms the Bankruptcy Court's Decision and Order in all respects.

## BACKGROUND

On January 31, 2024, Dynkin filed a voluntary petition pursuant to Chapter 7 of the United States Bankruptcy Code in the United States Bankruptcy Court for the Eastern District of New York, captioned *In re Barry Dynkin*, Case No. 24-70390-ast (the "Bankruptcy Case"). (Bankr. DE 1.) Allan B. Mendelsohn was appointed the Chapter 7 Trustee. (*Id*. at DE 2.) On

1

March 20, 2024, Alcalay filed a proof of claim in the Bankruptcy Case in the amount of $345,046.70.  (App. 280-96.)  The following relevant facts are taken from the record of the Bankruptcy Court in the underlying bankruptcy proceeding.

### (1) Pre-Petition Background

#### (a) The Florida State Court Proceeding

The debtor Barry Dynkin and his brother Benjamin Dynkin were members of Atlas Cybersecurity, LLC ("Atlas") and together with appellee Ben-Zion Alcalay's sons, Eliahu Alcalay and Benjamin Alcalay, were members of DACS Cybersecurity Holdings, LLC, which owned Atlas.  (*Id*. at 63-66.)

On November 23, 2020, the appellee Ben-Zion Alcalay commenced an action against the debtor Barry Dynkin, Benjamin Dynkin and Atlas (collectively the "Florida Defendants") in the Fifteenth Judicial Circuit Court in Palm Beach County, Florida (the "Florida State Court") for damages arising out of alleged fraudulent misconduct associated with three agreements entered into by the parties.  (*Id*. at 128 ¶ 3.)  In the Complaint, Alcalay alleged that Barry and Benjamin Dynkin (the "Dynkins") fraudulently misrepresented the success and financial condition of Atlas to induce the appellee to make a loan to Atlas, guarantee rent payments for Atlas's office and pay off certain debts that the Dynkins incurred with Atlas.[1]  (*Id*., Ex. 1.)  In particular, appellee alleged that to secure a $150,000.00 loan from Alcalay, the Dynkins misrepresented: (i) Atlas's ability to pay its expenses out of generated cash flow; (ii) the existence of guaranteed, in hand orders; (iii) Dynkins' ability to pay bills from existing profits generated by Atlas; and (iv) the

---

[1]In the Complaint, Alcalay alleged that (i) in late 2018 the Dynkins sought out a commercial real estate location to utilize as an office for Atlas in Nassau County, New York; (ii) in late 2019, the Dynkins needed funds to invest in Atlas, approached Alcalay's sons who declined to invest but referred the Dynkins to their father; and (iii) in January 2020, the Dynkins met with Alcalay in his office in Boca Raton, Florida to discuss an investment of funds in Atlas.  (DE 4.)

2

Dynkins had engaged in, and developed, Atlas's business for two years prior to Atlas's formal creation. (*Id*.) The Florida Defendants failed to respond to the Complaint. (*Id*. at 129 ¶ 10.)

On February 4, 2021, Alcalay filed an Amended Complaint against the Florida Defendants alleging claims for indemnification, prima facie tort, breach of contract, fraud, fraudulent inducement, a declaratory judgment and a permanent injunction. (*Id*., Ex. 3.) The Florida Defendants failed to respond to the Amended Complaint. (*Id*. at 129 ¶¶ 12-13.)

On May 5, 2021, Alcalay filed a motion for entry of an order of default against the Florida Defendants (the "default judgment motion"). (*Id*. at ¶ 14.) The Florida State Court conducted a hearing on May 20, 2021, and the Florida Defendants appeared with counsel. (*Id*. at ¶ 15.) The Florida State Court denied the default judgment motion without prejudice because the affidavits of service did not appear on the court's docket. (*Id*.) Appellee cured the docketing deficiency and filed a renewed default judgment motion. (*Id*. at 130 ¶¶ 17-18.) The Florida Defendants did not file a response to the renewed motion. (*Id*. at ¶ 19.)

On June 23, 2021, the Florida State Court conducted a hearing on the renewed default judgment motion, however, the Florida Defendants failed to appear and did not submit any opposition to the motion. (*Id*.) The Florida State Court granted the motion and determined that (1) the court had personal jurisdiction over the Florida Defendants; (2) the summons, complaint and amended complaint were properly served on the Florida Defendants; (3) no answer, motion or other response to the complaint or amended complaint was submitted by the Florida Defendants; and (4) the Florida Defendants appeared in the Florida State Court Action on May 20, 2021 ("Order of Judicial Default"). (*Id*. at 128-31.) The Clerk of the Court entered the Order of Judicial Default on June 30, 2021. (*Id*.) On July 13, 2021, the Florida State Court mailed a copy of the Order to the Florida Defendants. (*Id*. at 191.)

On July 16, 2021, appellee filed a motion for final judgment after default (the "motion for final default judgment"). (*Id*.) The Florida Defendants filed a motion to vacate the default judgment in the Florida State Court on August 23, 2021 and requested an evidentiary hearing to determine whether service of process upon the Florida Defendants was proper. (*Id*. at 192.) The Florida State Court held a hearing on the motion to vacate on September 14, 2021, and the Florida Defendants appeared with counsel. (*Id*.) The Court directed the parties to appear for an evidentiary hearing on November 1, 2021. (*Id*.) The Florida State Court conducted an evidentiary hearing on both the motion to vacate and the motion for final default judgment on November 1, 2021 and November 24, 2021, and all parties were represented by counsel. (*Id*.) On December 5, 2021, the Florida State Court denied the motion to vacate based on its factual findings that (i) service upon the Florida Defendants was properly effectuated, (ii) the Florida Defendants failed to establish excusable neglect for their default, and (iii) the Florida Defendants failed to establish meritorious factual defenses. (*Id*. at 188-206.) In addition, the Florida State Court granted Alcalay's motion for final default judgment. (*Id*.) On December 7, 2021, the Florida State Court entered a final default judgment (hereinafter the "Default Judgment") in favor of Alcalay and against the Florida Defendants for breach of contract, fraud, and fraudulent inducement and awarded damages in the amount of $239,291.40 plus interest. (*Id*. at Ex. 1 at 42.) The Florida Defendants did not properly perfect an appeal of the Default Judgment. (*Id*.)

### (b) The New York State Court Proceeding

Following the entry of the Default Judgment in the Florida State Court, on March 14, 2022, Alcalay commenced an action in the Supreme Court of the State of New York, Nassau County, captioned *Ben-Zion Alcalay v. Atlas Cybersecurity LLC and Barry Dynkin*, Index No. 602826/2022, seeking to domesticate the Default Judgment in New York (the "New York State

Court action").[2]  (*Id*. at 222-23.)  Appellee initiated the New York State Court action by filing a summons and motion for summary judgment (in lieu of a complaint).  (*Id*.)  Dynkin, on behalf of himself and Atlas, opposed the motion asserting the same arguments made in support of the motion to vacate in the Florida Court, including: (i) lack of service of process in both the Florida State Court action and the New York State Court action; (ii) the Florida State Court's lack of personal jurisdiction; and (iii) the existence of meritorious defenses to claims asserted in the Florida State Court action.  (*Id*. at 225-36.)

On August 25, 2023, the New York State Supreme Court granted Alcalay's summary judgment motion and held that the Default Judgment was properly entered in the Florida State Court and as such, was entitled to full faith and credit in the State of New York.  (*Id*. at 238-41.)  In addition, the Court held that Dynkin and Atlas could not "collaterally attack the Florida Judgment . . . on the basis of whether the [Florida] default judgment . . . was proper and/or whether the Florida Court had jurisdiction over them in the first instance."  *Id*.

Although appellant, as attorney for both himself and Atlas, filed a Notice of Appeal to the Appellate Division, Second Department, he failed to perfect his appeal within the statutory time limits.  (*Id*. at 951-62.)  The deadlines to do so have expired.

### (2) Post-Petition Background

After Dynkin filed for bankruptcy seeking, *inter alia*, to discharge the debt owed under the Default Judgment domesticated in New York, Alcalay filed a proof of claim in the Bankruptcy Case.  The appellee then filed a complaint and commenced an adversary proceeding in the Bankruptcy Court on May 6, 2024, seeking a determination that the debt owed under the

---

[2]The New York State action was not commenced against Benjamin Dynkin because he had filed a bankruptcy petition on February 14, 2022.

Default Judgment was nondischargeable.  (Adversary Proceeding No.: 8-24-08041-ast, DE 28.)  Specifically, the appellee sought to have the Bankruptcy Court enter judgment against the debtor excepting Alcalay's claim from discharge under 11 U.S.C. § 523(a) on the grounds that the debt Dynkin owed to Alcalay was for money obtained through fraud and false pretenses.  (*Id*.)  On June 6, 2024, the debtor filed an answer to the complaint.  (*Id*. at  DE 4.)

Appellee filed a motion for summary judgment on December 20, 2024, requesting that the Bankruptcy Court deny Dynkin's discharge of the debt owed to Alcalay and enter judgment excepting appellee's claim from discharge as a matter of law.  (*Id*. at  DE 14.)  Appellee argued principally that summary judgment was warranted under the doctrine of collateral estoppel.  In addition, Alcalay submitted a Rule 7056-1 statement of undisputed material fact, which Dynkin failed to timely dispute.  (*Id*. at DE 17.)  On January 22, 2025, appellant filed opposition to the motion, and on January 27, 2025, he filed a Rule 7056 counterstatement of material facts, five days late.  (*Id*. at DE 24.)  Although appellee moved to strike the appellant's counterstatement of material fact from the summary judgment record, the Bankruptcy Court denied the application and stated it would consider the untimely filed counterstatement.  (*Id*. at DE 27.)

On April 3, 2025, Chief Judge Trust granted the motion for summary judgment and excepted Alcalay's claims from discharge in the debtor's Bankruptcy Case.  *Id*.  The Bankruptcy Court determined that because the doctrine of collateral estoppel applied to the pre-petition Default Judgment (sounding in fraud), the debt Dynkin owed to Alcalay was non-dischargeable under 11 U.S.C. § 523(a) as a matter of law.  *Id*.  On May 20, 2025, Chief Judge Trust entered judgment in favor of Alcalay and declared that the claim in the amount of $345,046.70 was exempted and denied from discharge under 11 U.S.C. § 523(a) on the basis of fraud, fraudulent

misrepresentation and fraudulent inducement. *Id*. In addition, the Bankruptcy Court directed the Clerk of the Court to close the adversary proceeding without prejudice. *Id*.

On April 17, 2025, Dynkin filed a Notice of Appeal of the Decision and Order dated April 3, 2025 in this Court pursuant to 28 U.S.C. § 158. DE 1.

Familiarity with the factual background, procedural history in both the Bankruptcy Court and this Court, and the parties' arguments are assumed.

**STANDARD OF REVIEW**

This Court has jurisdiction to review appeals from decisions of a bankruptcy court pursuant to 28 U.S.C. § 158(a), which provides in relevant part that "[t]he district courts of the United States shall have jurisdiction to hear appeals . . . from final judgments, orders, and decrees; . . . [and] with leave of the court, from other interlocutory orders and decrees . . . of bankruptcy judges." 28 U.S.C. § 158(a)(1), (3). "An appeal under subsections (a) and (b) of this section shall be taken in the same manner as appeals in civil proceedings generally are taken to the courts of appeals from district courts." 28 U.S.C. § 158(c)(2). On an appeal the Court may "affirm, modify, or reverse a bankruptcy court's judgment, order, or decree" or it may remand with instructions for further proceedings. Fed. R. Bankr. P. 8013.

A district court reviews a bankruptcy court's conclusions of law *de novo* and its findings of fact under a clearly erroneous standard. *See In re Ames Dep't Stores, Inc.*, 582 F.3d 422, 426 (2d Cir. 2009). A finding is "clearly erroneous" when the reviewing court is left with the "definite and firm conviction that a mistake has been made." *District Lodge 26, Int'l Ass'n of Machinists & Aerospace Workers, AFL-CIO v. United Techs. Corp.*, 610 F.3d 44, 51 (2d Cir. 2010). The clearly erroneous standard requires "strong deference" to "findings of fact based on credibility assessments of witnesses [the court] has heard testify." *In re Pisculli*, 426 B.R. 52, 59

(E.D.N.Y. 2010), *aff'd*, 408 F. App'x 477 (2d Cir. 2011).  "An appellate court cannot substitute its interpretation of the evidence for that of the trial court simply because the reviewing court might give the facts another construction [and] resolve the ambiguities differently."  *Id.* at 68. Discretionary rulings of a bankruptcy court are reviewed for abuse of discretion.  *In re Tingling*, 990 F.3d 304, 307 (2d Cir. 2021).  "A bankruptcy court abuses its discretion when its ruling (1) rests on an error of law . . . or a clearly erroneous factual finding, or (2) cannot be located within the range of permissible decisions."  *In re Fletcher Int'l, Ltd.*, 661 F. App'x 124, 126 (2d Cir. 2016).

Additionally, "[a] district court reviews a bankruptcy court's order granting summary judgment *de novo*, drawing all factual inferences in favor of the non-moving party."  *In re Double Green Produce, Inc.*, No. 24-CV-5093 (KMK), 2025 WL 2682692, at *3 (S.D.N.Y. Sept. 18, 2025).  Federal Rule of Civil Procedure 56 is made applicable to the Bankruptcy Court through Federal Rule of Bankruptcy Procedure 7056 and applies in an adversary proceeding. *See* Fed. R. Bankr. P. 7056; *see also In re Dana Corp.*, 574 F.3d 129, 146-47 (2d Cir. 2009).  In turn, this Court applies the oft-repeated and well-understood standard of review for summary judgment motions, as discussed in *Bartels v. Inc. Vill. of Lloyd Harbor*, 97 F. Supp. 3d 198, 211 (E.D.N.Y. 2015), *aff'd sub nom. Bartels v. Schwarz*, 643 Fed. App'x. 54 (2d Cir. 2016), which discussion is incorporated by reference herein.

Finally, "[t]he application of collateral estoppel to a given case is a question of law that [appellate courts] review *de novo*."  *M.O.C.H.A. Society, Inc. v. City of Buffalo*, 689 F.3d 263, 284 (2d Cir. 2012).

**DISCUSSION**

Dynkin challenges the Bankruptcy Court's April 3, 2025 Order arguing that the Bankruptcy Court erred in denying his alleged debt to Alcalay as nondischargeable pursuant to Section 523(a) of the Bankruptcy Code on summary judgment. Specifically, the appellant maintains that the Bankruptcy Court erred in finding that he had committed fraud in obtaining money from Alcalay when the Court applied the doctrine of collateral estoppel to the Default Judgment entered in the Florida State Court. According to Dynkin, the Default Judgment was not entitled to preclusive effect because the Florida State Court lacked personal jurisdiction. As discussed below, the Court finds the appellant's arguments on appeal unpersuasive.

**A.      Denying Debt as Non-Dischargeable Pursuant to Section 523(a)**

The Bankruptcy Court discharges preexisting debts to give "honest but unfortunate" debtors a fresh start. *Cohen v. de la Cruz*, 523 U.S. 213, 217 (1998). "However, the fresh start policy does not apply to all debts resulting from certain types of undesirable behavior such as fraud." *Evans v. Ottimo*, 469 F.3d 278, 281 (2d Cir. 2006); *see* 11 U.S.C. § 523(a)(2). Section 523(a)(2)(A) of the Bankruptcy Code provides, in relevant part, that "[a] discharge does not discharge an individual debtor from any debt . . . for money, property, services, or an extension, renewal, or refinancing of credit, to the extent obtained by . . . false pretenses, a false representation, or actual fraud, other than a statement respecting the debtor's or an insider's financial condition." 11 U.S.C. § 523(a)(2)(A). To establish false pretenses under Section 523, a creditor must show "either conduct or an implied misrepresentation by the debtor that was intended to defraud a creditor into turning over money or property." *In re Delia*, No. 12-CV-2851, 2013 WL 5450456, at *10 (S.D.N.Y. Sept. 30, 2013). Similarly, proving a false representation under this section "requires evidence of a false or misleading statement with

9

intent to defraud, as well as establish[ing] justifiable reliance." *Id.* Proof of actual fraud under Section 523 rests on the five element of common law fraud: "(i) the debtor made a false representation; (ii) the debtor knew the representation was false at the time it was made; (iii) the representation was made with the intent to deceive the creditor; (iv) the creditor justifiably relied on the representation; and (v) the creditor was injured by the representation and suffered damages as a result." *In re Drummon*, No. 24-CV-1668, 2025 WL 1327191, at *4 (S.D.N.Y. May 7, 2025); *see In re Wu,* No. 20-44314-jmm, 2024 WL 63886, at *14 (Bankr. E.D.N.Y. Jan. 3, 2024). Under Section 523(a), nondischargeability must be proven by the creditor by a preponderance of the evidence. *See Grogan v. Garner*, 498 U.S. 279, 291 (1991); *see Heilbron v. Plaza*, No. 20-CV-00312 (CBA), 2021 WL 1062034, at *2 (E.D.N.Y. Mar. 19, 2021).

### B.    Collateral Estoppel

"It is well-settled that preclusion principles apply in bankruptcy proceedings." *Evans*, 469 F.3d at 281. Thus, parties may "invoke collateral estoppel to preclude relitigation of the elements necessary to meet a § 523(a) exception." *Ball v. A.O. Smith Corp.*, 451 F.3d 66, 69 (2d Cir. 2006); *see Grogan*, 498 U.S. at 284 n.11 (noting "collateral estoppel principles do indeed apply in discharge exception proceedings pursuant to § 523(a)"); *see also In re Ribotsky*, No. 23-70583-ast, 2023 WL 8854187, at *3 (Bankr. E.D.N.Y. Dec. 21, 2023) (observing that "[c]ase law is clear that [a bankruptcy court] may apply rules of issue preclusion and claim preclusion to nondischargeability disputes"). Collateral estoppel (or issue preclusion) "bars repetitious suits involving the same cause of action once a court of competent jurisdiction has entered a final judgment on the merits." *NML Capital, Ltd. v. Bianco Central de la Republica Argentina*, 652 F.3d 172, 184 (2d Cir. 2011); *see Parklane Hosiery Co. v. Shore*, 439 U.S. 322, 327 n.5 (1979)

(holding a "judgment in the prior suit precludes relitigation of issues actually litigated and necessary to the outcome of the first action").

Bankruptcy Courts, like all federal courts, are bound to give "preclusive effect to state court judgments whenever the courts of the state from which the judgments emerged would do so." *Kelleran v. Andrijevic*, 825 F.2d 692, 694 (2d Cir. 1987). That is to say, "bankruptcy proceedings may not be used to relitigate issues already resolved in a court of competent jurisdiction." *Id.* at 695. Bankruptcy courts are required to accord a state court default judgment with the same preclusive effect as would be given by that state's courts. *Id.* at 694; *see, e.g., In re Bocker*, 123 B.R. 164, 165 (E.D.N.Y. 1991) (upholding bankruptcy court's dismissal of a claim that had already been subject to a default judgment in state court); *In re Lady Liberty Tavern Corp.*, 94 B.R. 812, 816 (S.D.N.Y. 1988) (reversing bankruptcy court that failed to give preclusive effect to a state court's default judgment). Collateral estoppel is designed to prevent parties from "contesting matters that they had a full and fair opportunity to litigate, thereby conserving judicial resources and protecting parties from the expense and vexation of multiple lawsuits." *Marvel Characters, Inc. v. Simon*, 310 F.3d 280, 286 (2d Cir. 2002).

In giving preclusive effect to a state court judgment, a federal court looks to the law of the state in which the judgment was entered. *See Evans*, 469 F.3d at 281; *see also In re Ferrandina*, 533 B.R. 11, 22 (Bankr. E.D.N.Y. 2015) (observing state law applied to determine the preclusive effect a federal court gives a state court judgment); *In re Shiver*, 396 B.R. 110, 117 (Bankr. S.D.N.Y. 2008) (noting the Full Faith and Credit Act "directs a federal court to refer to the preclusion law of the State in which judgment was rendered"); *see, e.g., In re Appel*, 315 B.R. 645, 648 (E.D.N.Y. 2004) (applying Florida law). Here, the Court applies the preclusion law of Florida.

11

Under Florida law, collateral estoppel bars relitigation of an issue when the following elements are established: "(1) the issue at stake must be identical to the one decided in the prior litigation; (2) the issue must have been actually litigated in the prior proceeding; (3) the prior determination of the issue must have been a critical and necessary part of the judgment in that earlier decision; and (4) the standard of proof in the prior action must have been at least as stringent as the standard of proof in the later case." *In re St. Laurent*, 991 F.2d 672, 676 (11th Cir. 1993) (interpreting doctrine of collateral estoppel under Florida law); *see Mobil Oil Corp. v. Shevin*, 354 So.2d 372, 374 (Fla. 1977). In addition, "[u]nder Florida law, a judgment is deserving of *res judicata* or collateral estoppel effect only if it qualifies as a final judgment." *In re Shiver*, 396 B.R. at 126 n.9. The finality of a final default judgment occurs "[o]nce the litigation is terminated and the time to appeal has run." *Miller v. Fortune Ins. Co.,* 484 So.2d 1221, 1223 (Fla. 1986).

### C.      Analysis

As a preliminary matter, Dynkin's argument that the Default Judgment was not entitled to preclusive effect because the Florida State Court lacked personal jurisdiction is unavailing. Appellant litigated the jurisdictional question in the Florida State Court in the motion to vacate the default judgment and was bound by the result.

> Where a defendant makes makes a special appearance to challenge the jurisdiction of a court, and the court overrules the objection and determines that it does have jurisdiction, that decision is *res judicata* and precludes collateral attack on the judgment, even though the ruling may have been erroneous on the facts or law. An aggrieved defendant must seek reversal in an appellate court of the state involved or, if he is unsuccessful there, in the Supreme Court of the United States. However, he cannot later attack the judgment on jurisdictional grounds if he does not avail himself of those remedies, or if the judgment is affirmed, or if the appellate court or the Supreme Court of the United States declines to consider the case. *See Balwin v. Iowa State Traveling Men's Association*, 283 U.S. 522 (1931); *see also Sherrer v. Sherrer*, 334 U.S. 343 (1948).

*Baker v. Bennett*, 633 So.2d 91, 92 (Fla. Dist. Ct. App. 1994).

12

Dynkin had a full and fair opportunity to assert and litigate the issue of personal jurisdiction.  Appellant filed extensive briefing alleging, *inter alia*, that the Florida State Court had no personal jurisdiction over him and participated in a two-day evidentiary hearing wherein the court considered and rejected Dynkin's arguments and defenses.  The Florida State Court then entered the Default Judgment, however, appellant failed to properly perfect an appeal of the decision and judgment.  Thereafter, when Alcalay commenced an action in the New York State Court, Dynkin attempted to relitigate his defenses, including personal jurisdiction, arguing that the Florida State Court erroneously determined it had personal jurisdiction over him when the court denied his motion to vacate.  Following briefing on appellee's summary judgment motion, the New York State Court considered and rejected Dynkin's arguments holding that appellant had a full and fair opportunity to litigate his defenses in the Florida State Court, including personal jurisdiction, and concluding the New York State Court was required to give full faith and credit to the Default Judgement.  Although Dynkin filed a notice of appeal, he failed to perfect the appeal.  Finally, the Bankruptcy Court considered and rejected appellant's unsuccessful jurisdictional arguments when it granted appellee's summary judgment motion, enforcing principles of *res judicata* and collateral estoppel based on well-established Supreme Court precedent.  Accordingly, Chief Judge Trust properly determined that appellant was foreclosed from collaterally attacking the Default Judgement on jurisdictional grounds.

Next, applying the standard of review and the preclusion principles to the discharge exception proceedings pursuant to Section 523(a), the Court concludes that the Florida State Court's default judgment, based on a finding of fraud, bars relitigation of the fraudulent nature of the debt in Bankruptcy Court.  The undersigned considers each of the collateral estoppel elements in turn.

13

### (1) Identical Issues

The first element requires that the issue at stake in this adversary proceeding be identical to the issues involved in the Florida State Court action. To prove fraud under Florida law, a plaintiff must establish that the defendant made a "deliberate and knowing misrepresentation designed to cause and actually causing detrimental reliance by the plaintiff." *First Interstate Dev. Corp. v. Ablanedo*, 511 So.2d 536, 539 (Fla. 1987). The Eleventh Circuit has held that the elements from common law fraud in Florida closely mirror the requirements of 11 U.S.C. § 523(a)(2)(A). *In re St. Laurent*, 991 F.2d at 676. Therefore, this Court finds that the elements of common law fraud in Florida and Section 523 are sufficiently identical to meet the first prong of the test for collateral estoppel.

Nevertheless, Dynkin asserts that there is a lack of identity of issues between the Florida State Court action and the adversary proceeding in the Bankruptcy Court. The Court disagrees. Alcalay alleged sufficient facts in the Florida complaints to support a cause of action for common law fraud under Florida law. In the amended complaint in the Florida State Court action, Alcalay alleged that (1) appellant provided false information to induce appellee into loaning money as well as providing a guarantee for a real estate lease, (2) appellant knew the statements were false, (3) the statements were intended to induce the appellee to loan money, and (4) the appellee detrimentally relied on these statements. These are the same facts that Alcalay alleged in the adversary proceeding complaint. Thus, Chief Judge Trust correctly determined that the issue of appellant's fraud in the Florida State Court action (underlying the Default Judgment) was identical to the issue of fraud under Section 523(a)(2)(A) in the adversary proceeding.

### (2) Actual Litigation of Issues in Prior Action

14

The second element requires that the issue of fraud was actually litigated in the Florida State Court action. "An issue is considered actually litigated when the issue is properly raised, by the pleadings or otherwise, and is submitted for determination, and is determined." *In re Barreto*, 514 B.R. 702, 715 (Bankr. S.D. Fla. 2013). "Actually litigated only contemplates that the defendant have been given a full opportunity to defend himself." *In re Seifert*, 130 B.R. 607, 609 (Bankr. M.D. Fla. 1991). "Under Florida law, a pure default judgment entered when there is no participation by the defendant can be sufficient to satisfy the actually litigated element of collateral estoppel." *In re Appel*, 315 B.R. at 649; *see also In re Seifert*, 130 B.R. at 609 ("Debtor/defendant could have reasonably foreseen the consequences of not defending an action based in part on fraud. It would be undeserved to give debtor/defendant a second bite at the apple when he knowingly chose not to defend himself in the first instance."). As a result, a default judgment obtained in state court should not be discounted because a defendant voluntarily chose not to participate in the case. *Id.* As the Second Circuit has made clear, "when a party defaults by failure to answer . . . the defaulting litigant may not further contest the liability issues." *Evans*, 469 F.3d at 282; *see Department of Health Rehabilitative Serv. Office of Child Support Enforcement v. Wood*, 600 So.2d 1298, 1300 (Fla. Dist. Ct. App. 1992) ("When a fact in issue or cause of action has been finally decided by a court of competent jurisdiction, neither of the parties shall be allowed to relitigate so long as the judgment or decree stands unreversed. This principle applies to default judgments, issues raised in defense, and matters raised by motion.").

In this case, Dynkin had a full and fair opportunity to respond to the Florida Complaints and assert meritorious defenses in the Florida State Court but ultimately failed to do so. Additionally, despite having participated in a two-day evidentiary hearing in the Florida State

15

Court while represented by counsel and afforded an opportunity to set forth meritorious defenses, the Florida State Court denied the motion to vacate and granted the motion for final default judgment, thus strengthening the determination that the issue was actually litigated. *See In re* Shiver, 396 B.R. at 126 n.9 ("Florida law only gives *res judicata* or collateral estoppel effect to a final order or judgment."). Finally, in the New York State Court action, Dynkin again had a full and fair opportunity to appeal both the Default Judgment and the domesticated New York Judgment, but despite having appeared as counsel for himself and Atlas and seemingly knowledgeable of legal procedure, he let the deadlines to appeal expire, rendering the judgments final under Federal law. Hence, Chief Judge Trust correctly determined that the issue of appellant's fraud in the Florida State Court action (underlying the Default Judgment) was actually litigated in the prior action.

### (3) Critical and Necessary to Support Final Judgment

The third element requires that the issue of fraud and fraudulent inducement were critical and necessary to the Florida State Court's entry of the Default Judgment. "The necessarily decided prong of the collateral estoppel test ensures that the prior court actually ruled on the issue at hand. The issue must have been squarely addressed or directly decided in the former suit before it can be held as conclusive for subsequent litigation." *Community State Bank v. Strong*, 651 F.3d 1241, 1268 (11th Cir. 2011). "The law is clear that a default judgment conclusively establishes between the parties, so far as subsequent proceedings on a different cause of action are concerned, the truth of all material allegations contained in the complaint in the first action and every fact necessary to uphold the default judgment." *In re Vickers*, 247 B.R. 530, 536 (Bankr. M.D. Fla. 2000) (finding every allegation in the state court complaint, including the elements of common law fraud, to be critical and necessary for the state court default judgment).

Thus, where the face of a default judgment specifically includes a cause of action for fraud, the critical and necessary requirement is satisfied. *See In re Hartman*, 274 B.R. 911, 916 (Bankr. M.D. Fla. 2002): *In re Bentor*, 514 B.R. 907, 915 (Bankr. S.D. Fla. 2014) (finding that because the final judgment in the state court included a judgment for fraud in the full amount of damages that were awarded, "the fraud claims were critical and necessary part" of the state court final judgment").

Here, the Default Judgment specifically states that appellee "is entitled to entry of Final Judgment against the [Florida Defendants] . . . and the recovery of damages resulting from the breach of contract, fraud, fraudulent inducement, and the other causes of action detailed in the [Amended Complaint]." In the Forida State Court's Order denying appellant's motion to vacate the default judgment, the court found that Dynkin had no meritorious defense against Alcalay's claims of fraud and fraudulent inducement. Accordingly, Chief Judge Trust correctly concluded that appellee's fraud and fraudulent inducement causes of action in the Florida Complaints were critical and necessary to the Default Judgment.

### (4) Burden of Persuasion

The final prong concerns the weight of the burdens of persuasion. The Supreme Court has determined that "the standard of proof for the dischargeability exceptions in 11 U.S.C. § 523(a) is the ordinary preponderance-of-the-evidence standard." *Grogan*, 498 U.S. at 281. In addition, the Eleventh Circuit has determined that the evidentiary burdens for fraud under Florida law and under § 523(a) of the Bankruptcy Code are identical. *In re St. Laurent, II*, 991 F.2d at 676; *See Wieczoreck v. H & H Builders, Inc.*, 475 So.2d 227 (Fla. 1985) (finding the burden of proof for fraud under Florida law is "a preponderance or greater weight of the evidence"). Thus, the Court finds this issue is satisfied.

17

In short, collateral estoppel applies to the pre-petition Default Judgment (sounding in fraud) in favor of the appellee and renders appellant's debt nondischargeable under 11 U.S.C. § 523(a).

Accordingly, the Bankruptcy Court did not err in granting appellee's summary judgment motion and excepting appellee's claims from discharge under 11 U.S.C. § 523(a) in appellant's Bankruptcy Case.  Furthermore, the record clearly reflects that Chief Judge Trust invested substantial effort and time, applying considerable diligence, thoroughness and fairness to this matter.  Accordingly, the Court affirms the Bankruptcy Court's Order in all respects.

## CONCLUSION

For the foregoing reasons, the Court affirms the rulings of the Bankruptcy Court in all respects.  Appellant's appeal is denied with prejudice.  The Clerk of the Court shall enter judgment accordingly and close the case.

**SO ORDERED.**

Dated: Central Islip, New York
       March 10, 2026

                                        /s/ Gary R. Brown
                                        GARY R. BROWN
                                        United States District Judge

-

18